# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

GARDEN CITY EMPLOYEES' RETIREMENT
SYSTEM, Individually and on Behalf of All
Others Similarly Situated,

          Plaintiff,

      v.

PSYCHIATRIC SOLUTIONS, INC., JOEY A.
JACOBS, BRENT TURNER and JACK E.
POLSON,

          Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Master File:  3:09-CV-00882

CLASS ACTION

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE
MOTION OF PSYCHIATRIC SOLUTIONS INSTITUTIONAL INVESTOR
GROUP FOR APPOINTMENT AS LEAD PLAINTIFF
AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL**

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ......................................................................................................... 2

ARGUMENT ......................................................................................................................... 10

    I.   THE COURT SHOULD APPOINT PSYCHIATRIC SOLUTIONS
       INSTITUTIONAL INVESTOR GROUP AS LEAD PLAINTIFF .................................. 10

       A.   The Procedure Required by the PSLRA .................................................. 10

       B.   Psychiatric Solutions Institutional Investor Group Should Be
           Appointed as Lead Plaintiff ..................................................................... 11

           1.   Psychiatric Solutions Institutional Investor Group Is Willing to
               Serve As Class Representative ......................................................... 11

           2.   Psychiatric Solutions Institutional Investor Group Is the Most
               Adequate Lead Plaintiff ................................................................... 12

               a.   Psychiatric Solutions Institutional Investor Group
                    Has the Largest Financial interest………………………..……12

               b.   Psychiatric Solutions Institutional Investor Group
                    Satisfies the Requirements of Rule 23 ......................................... 14

    II.   THE COURT SHOULD APPROVE PSYCHIATRIC SOLUTIONS
       INSTITUTIONAL INVESTOR GROUP'S CHOICE OF LEAD
       COUNSEL FOR THE CLASS ......................................................................... 16

CONCLUSION ....................................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*In re American Service Group, Inc., et al.,*
    2006 U.S. Dist. LEXIS 61779 (M.D. Tenn. Aug. 28, 2006) .......................................... 1, 10, 12

*In re Apollo Group Inc. Sec. Litig.,*
    Master File No. CV-04-2147 PHX-JAT (D.Az.) ..................................................................... 16

*In re Bridgestone Corporation Securities Litigation,*
    3:01–cv–00017, (M.D. Tenn.) ................................................................................................ 15

*In re Cendant Corp. Litig.,*
    264 F.3d 201 (3d cir. 2001) ................................................................................. 1, 12, 13, 14

*In re Cendant Corp. Sec. Litig.,*
    404 F.3d 173 (3d Cir. 2004) .............................................................................................. 2, 11

*In re McKesson HBOC Inc. Sec. Litig.,*
    5:99-cv-20743-RMW (N.D. Ca.) .......................................................................................... 15

*In re Merrill Lynch & Co., Inc. Sec., Derivative & ERISA Litig.,*
    Master File No. 07-cv-9633 (LBS)(AJP)(DFE) (S.D.N.Y.) ...................................................... 15

*In re Schering-Plough Sec. Litig.,*
    Master File No. 01-CV-0829 (KSH/RJH) (D.N.J.) ................................................................ 15

*In re Sterling Financial Corp. Sec. Litig.,*
    No. 07-2171, 2007 WL 4570729 (E.D. Pa. Dec. 21, 2007) ....................................... 8, 9, 13, 14

*In re The Mills Corp. Sec. Litig.,*
    No. 1:06-cv-00077 (LO-TRJ) (E.D. Va.) .............................................................................. 15

*In re Vicuron Pharm. Inc. Sec. Litig.,*
    225 F.R.D. 508 (E.D. Pa. 2004) ...................................................................................... 12, 13

*In re WorldCom, Inc. Sec. Litig.,*
    No. 02 civ. 3288 (DLC), 2004 U.S. Dist. LEXIS 22992 (S.D.N.Y. Nov. 12, 2004)... 1 4, 15, 16

Case 3:09-cv-00882    Document 33    Filed 11/20/2009    Page 3 of 25

**Statutes and Rules**

15 U.S.C. § 78u-4(a)(1) ................................................................................................ 9
15 U.S.C. § 78u-4(a)(3)(A)(i)(II) ............................................................................ 9, 11
15 U.S.C. § 78u-4(a)(3)(B) .................................................................................. 1, 9, 14
15 U.S.C. § 78u-4(a)(3)(B)(i) ............................................................................... 2, 9, 11
15 U.S.C. § 78u-4(a)(3)(B)(ii) ................................................................................. 8, 9
15 U.S.C. § 78u-4(a)(3)(B)(iii) ................................................................................ 12
15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ........................................................................... 10

Federal Rules of Civil Procedure:

Rule 23 ...................................................................................................... 2, 9 13, 14
Rule 23(a)(3) ................................................................................................... 13
Rule 23(a)(4) ................................................................................................... 13

## OTHER AUTHORITIES

H.R. Conf. Rep. No. 104-369, at 34, 104th Cong. 1st Sess. (1995) ....................................... 12
H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733 ......... 11

David Jackson, *Hospital Thwarts Police Inquiries*, Chicago Tribune, July 17, 2008………..4,6

Psychiatric Solutions Institutional Investor Group submits this memorandum in support of its motion to be appointed as lead plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as added by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and for approval of their selection of the law firms of Barrack, Rodos & Bacine ("BR&B") and Motley Rice LLC ("Motley Rice") as lead counsel for the Class.

## PRELIMINARY STATEMENT

Institutional investors Policemen's Annuity Benefit Fund of Chicago ("Chicago Police") and KBC Asset Management NV (collectively the "Psychiatric Solutions Institutional Investor Group"), seek to represent in this securities class action all investors who purchased or otherwise acquired Psychiatric Solutions, Inc. ("Psychiatric Solutions" or the "Company") securities during the period from February 21, 2008 through February 25, 2009 (the "Class Period"), and who were damaged thereby, as a result of the false and misleading statements made by defendants (1) Psychiatric Solutions, (2) Joey A. Jacobs ("Jacobs"), its Executive Chairman of the Board, President and Chief Executive Officer, (3) Brent Turner ("Turner"), Executive Vice-President, Finance and Administration and (4) Jack E. Polson, its Executive Vice-President and Chief Accounting Officer. As more fully discussed below, during the Class Period, the defendants caused the Company's stock to be traded at artificially inflated prices by issuing a series of false and misleading statements to and concealing material adverse information from investors regarding its business, operations, practices and financial reporting.

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as lead plaintiff in the prosecution of the class's claims. *In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001), *cert denied*, 535 U.S. 929 (2002); *see also In re Am. Serv. Group, Inc., et al.*,

2006 U.S. Dist. LEXIS 61779, at *7-8, (M.D. Tenn. Aug. 28, 2006). In that regard, the Court is required to appoint the lead plaintiff movant or group with the largest financial interest that has made a *prima facie* showing of adequacy as a class representative under Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i).

Psychiatric Solutions Institutional Investor Group believes that it has the largest financial interest in the relief sought in this action, having sustained $2,158,151 of losses. It also satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure as an adequate class representative with claims typical of other class members. Indeed, Chicago Police and KBC Asset Management NV – both of whom are institutional and sophisticated investors that collectively comprise the Psychiatric Solutions Institutional Investor Group – are each paradigmatic lead plaintiffs envisioned by Congress in enacting the PSLRA, are familiar with the responsibilities of a lead plaintiff under the PSLRA, and are willing and able to zealously represent the interests of the putative Class in order to secure the maximum recovery for the benefit of the Class through this litigation. As prototypical institutional lead plaintiffs, Chicago Police and KBC Asset Management NV are best-suited under the PSLRA "to select lead counsel, negotiate a compensation structure, monitor counsel's efforts, and make decisions about 'the objective of representation' . . ." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 198 (3d Cir. 2005) (citation omitted).

## STATEMENT OF FACTS

As is appropriate at this stage of the litigation, the following statement of facts is drawn from the complaint filed in this action on September 21, 2009.

Psychiatric Solutions, headquartered in Franklin, Tennessee, provides in-patient behavioral health care services for children, adolescents and adults through acute in-patient

2

behavioral health care facilities and residential treatment centers. Its services include nursing observation and care, daily intervention and oversight by a psychiatrist, and coordinated treatment by a physician-led team of mental health professionals.

Many of the hospitals owned by Psychiatrist Solutions had a history of systemic deficiencies regarding quality of care and patient safety. As a product of such deficiencies, the Company was failing to protect patients from sexual abuse, provide a safe environment for their care, ensure that its patients were being adequately monitored and its facilities adequately staffed, trained and supervised, or properly report incidents of lack of quality of care, patients' safety problems or sexual abuse to state and federal authorities. The Company's neglect, systemic failures to provide quality of care and its patient safety problems caused it to be cited for numerous state and federal deficiencies from at least 2005 through 2007.

On February 20, 2008, in an effort to comfort the market and buoy its stock price, Psychiatric Solutions issued its 2007 financial results and increased its earnings guidance for 2008. Thereafter, on February 29, 2008, the Company filed its Form 10-K for the fourth quarter and year-end, 2007. Beyond including the same financial results previously reported, its Form 10-K also represented that Psychiatric Solutions operated "more efficiently" and provided "higher quality care" than its competitors. Psychiatric Solutions further represented that it possessed "enhanced operating efficiencies," that its growth strategies were supported by a managements team possessing "extensive experience in the operation of multi-facility healthcare services companies," and that its focus on "efficient operations," "increases…. profitability," and "would attract …patients."

The Company further comforted the market by boldly representing that "in-patient facilities we own and operate generally are in substantial compliance with current applicable

federal, state, local and independent review body regulations and standards," noting that healthcare facilities are required to comply with extensive governmental regulation relating to, *inter alia*, the adequacy of medical care, equipment, personnel, operating policies and procedures and maintenance of adequate records.

On April 30, 2008, Psychiatric Solutions reported its first quarter 2008 financial results, remarking that "PSI performed extremely well" and adding: "our focus on execution enabled us to achieve our same-facility revenue and EBITDA targets and implement our plans for adding new beds." The Company's press release comforted investors with the further assurance that "market dynamics in the in-patient behavioral health industry remain favorable, supporting our ability to continue implementing our proven business model." And the Company increased its earnings guidance.

On July 17, 2008, the *Chicago Tribune* ("*Tribune*") issued an investigative report called "*Tribune* investigation: hospital thwarts police inquiry," which disclosed unreported violence among juvenile patients at Riveredge Hospital ("Riveredge"), a facility owned by Psychiatric Solutions and the largest psychiatric facility in Illinois. The *Tribune* reported that Riveredge had "left sexual predators unguarded despite allegations that at least 10 mentally disabled children were assaulted," and that the hospital had failed to advise the appropriate government authorities. As a result of the *Tribune's* investigation, the Illinois Department of Children and Family Services ("DCFS") placed a hold on admitting to Riveredge youths in state custody. As news of the investigative article and the DCFS "hold" came to light, Psychiatric Solutions stock traded lower, although still at artificially inflated levels due to defendant's false and misleading statements and material omissions.

4

On July 30, 2008, Psychiatric Solutions reported its second quarter 2008 financial results and updated its earnings guidance range for 2008. In a conference call on July 31, 2008, commenting on a Department of Justice investigation regarding Riveredge, defendant CEO Jacobs assured the market that the investigation involved incidents that had occurred in 2006 and 2007 — characterizing them as unfortunate incidents that "do occur in this patient population" — while assuring investors that "minimizing and eliminating these types of incidents is one of PSI's top priorities," adding "we take continuous improvement of quality, safety and risk management very seriously, and we have built a very effective infrastructure over the past several years." Jacobs led investors to believe that the situation was not "material," otherwise the Company would disclose its discussions with DCFS. With regard to the issue of the Company's compliance program, defendant Jacobs further assured investors that Psychiatric Solutions is "in compliance…on reporting," adding "we know when to report, how to report" and "capture much more than we actually have to report, but we do diligently report anything that an agency needs to see."

As a result of defendants' reassurances concerning the Company's exposure at Riveredge, Psychiatric Solutions stock trading price inclined and continued to increase, reaching as high as $39.32 by August 11, 2008.

On October 30, 2008, the Company reported its third quarter 2008 financial results, confirming its 2008 earnings guidance and announcing an increase in guidance for 2009 over its performance in 2008. Discussing Riveredge, defendant Jacobs stated that while a DCFS intake "hold" was still in place, it was expected to be lifted in the fourth quarter and that any such "hold" would have no impact whatsoever on the Company's financial performance in 2009.

Jacobs further represented that "we feel good about the quality of care at Riveredge and it's been re-evaluated by numerous people since the admissions hold."

Psychiatric Solutions stock price continued to trade at artificially inflated levels as a consequence in the Company's false and misleading statements and assurances to the market. Then, on February 25, 2009, the Company announced disappointing fourth quarter and year-end financial results, missing its 2008 guidance of $2.02 to $2.03 per diluted share, instead reporting $1.92 per diluted share. This huge earnings miss was due to problems at the Company's Riveredge facility, including the effect of the continuing "hold" placed on the facility by DCFS, additional charges related to the investigation and an increase in the Company's general and professional liability reserves. As a consequence, Psychiatric Solutions also reduced its 2009 guidance from $2.40 to $2.44 per diluted share to $2.24 to $2.32 per diluted share.

And Psychiatric Solutions further shocked the market by disclosing that DCFS had started an investigation in November 2008 based on the *Tribune* investigation, something that had not been revealed by the defendants previously, and that itself would clearly have negated any potential that the DCFS "hold" would be lifted in fourth quarter 2008. On the conference call following the release of this news, at least one dismayed analyst questioned why Psychiatric Solutions had failed to release this adverse information sooner, adding "this is probably the biggest miss you had since being a public company, so I think your shareholders would like to hear that."

The February 25, 2009, adverse disclosures shocked an otherwise unsuspecting market. On this news, Psychiatric Solutions stock collapsed $9.79 per share to close at $17.50 per share on February 26, 2009, a 1-day decline of 35%, on volume of more than 17 million shares — over

6

19 times its average 3-month daily volume. This was the lowest the company stock had traded at in over four years.

Thereafter, an investigation by the University of Illinois at Chicago's Department of Psychiatry ("UIC") culminated in a report on April 3, 2009, with adverse findings and revelations of facts that contradicted defendants' prior statements or assurances. For example, the independent report confirmed that administrators at the Riveredge facility had failed to protect young patients from sexual assault and did not properly report the attacks to authorities. Importantly, the UIC report confirmed that incidents at the Riveredge facility continued into 2008, including two such incidents that occurred in August 2008 — as opposed to having occurred only back in 2006 or 2007. The report further detailed "long-standing and reoccurring problems" at several Psychiatric Solution facilities, including harm to patients and unsafe treatment environments; inadequate staffing; sexual assaults; poor medical care; unqualified or incompetent staff; unreliable incident reporting; ineffective treatment and after-care planning; and a general failure of professional clinical leadership.

The UIC report also found:

> There is compelling data about the tendency of this organization's leadership to avoid taking direct responsibility for longstanding and reoccurring clinical/administrative failures — in effect, placing the onus far the chronic quality of care problems downward: first, onto the hospital staff "who do not perform their duties"; [and] second, onto mentally ill patients who "refuse to comply with the rules."…
>
> Such resistance to critical self-examination, and the organizational tendency to "blame downward" and/or "outward" when quality of care problems arise, is by no means limited to Riveredge officials.  ***In fact, the earlier brief review of similar problems in PSI facilities around the United States shows a corporate culture operating from one crisis to the next – always primed to immediately spring into action to fix problems that were otherwise ignored until yet another crisis eventually forces attention to be paid.***

7

Armed with the report, DCFS continued its intake "hold" at the Riveredge facility, finding the care provided there "completely unacceptable," as the state remained "outraged at the pain and violence suffered by innocent children in this facility's care."

At bottom, during the Class Period, defendants issued materially false and misleading statements concerning the Company's safeguards and controls over its operations, including its Riveredge facility, downplayed incidents at its facilities — even indicating that the deficiencies had been resolved — assured investors that corrective actions had been taken to improve quality, safety and risk management and misrepresented the effect that the DCFS intake "hold" would have on its operations, while falsely portraying that hold as being short-term and likely to be resolved in fourth quarter 2008.

In addition, defendants issued materially false and misleading statements regarding its financial results and compliance with Generally Accepted Accounting Principles ("GAAP"). Summarizing, Psychiatric Solutions had not properly accounted for its contingent liabilities related to deficiencies surrounding its operations.

As a consequence of the defendants' false and misleading statements and omissions, Psychiatric Solutions stock traded at artificially inflated prices during the Class Period, reaching a high of $39.71 per share on July 8, 2008, in stark contrast to the $17.50 per share at which it closed on February 26, 2009, upon the adverse and corrective disclosure of February 25, 2009.

The above-captioned securities class action was filed on September 21, 2009. As required by the PSLRA, a notice of the pendency of this action was published on September 21, 2009, alerting class members to the 60 day deadline for seeking lead plaintiff appointment. *See* Affidavit of J. Gerard Stranch, IV in Support of the Motion of the Psychiatric Solutions

8

Institutional Investor Group for Appointment as Lead Plaintiff and Approval of Its Selection of Lead Counsel ("Stranch Affidavit"), Ex. A.

## ARGUMENT

## I. THE COURT SHOULD APPOINT THE PSYCHIATRIC SOLUTIONS INSTITUTIONAL INVESTOR GROUP AS LEAD PLAINTIFF

### A. The Procedure Required by the PSLRA

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this Act has been filed," the Court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). *In re Sterling Fin. Corp. Sec. Litig.*, No. 07-2171, 2007 WL 4570729, at *1 (E.D. Pa. Dec. 21, 2007). Thereafter, the Court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." Consolidation is not required here as there has not been another action filed under the PSLRA arising from the facts and circumstances described herein beyond the above captured matter, which was filed on September 21, 2009.

The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." Sections 21D(a)(1) and (a)(3)(B), 15 U.S.C. §§ 78u-4(a)(1) and (a)(3)(B). First, the plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment of lead plaintiff. Section 21D(a)(3)(B)(ii), 15 U.S.C. § 78u-4(a)(3)(B)(ii). The PSLRA requires the court to consider, within 90 days after publication of that notice, all timely filed motions to be appointed as lead plaintiff made by any person or group of

9

persons who are members of the proposed class.  Sections 21D(a)(3)(A)(i)(II) and (a)(3)(B)(i), 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (a)(3)(B)(i).

Pursuant to Section 21D(a)(3)(B), the court "shall" appoint the "most adequate plaintiff" to serve as lead plaintiff and shall presume that the "most adequate plaintiff" is the person, or group of persons, that:

> (aa)    has either filed the complaint or made a motion in response to a notice. . .;
>
> (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  Section 21D(a)(3)(B)(iii)(II), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  *See also In re Am. Serv. Group, Inc.*, 2006 U.S. Dist. LEXIS 61799, at *7-8.  Psychiatric Solutions Institutional Investor Group satisfies this criteria.  It is therefore entitled to the presumption that it is the most adequate plaintiff to represent the Class and, as a result, should be appointed lead plaintiff in this action.

**B.    Psychiatric Solutions Institutional Investor Group Should Be Appointed as Lead Plaintiff**

**1.    Psychiatric Solutions Institutional Investor Group Is Willing to Serve As Class Representative**

In response to the notices issued on September 21, 2009, and after reviewing a complaint filed against the Company and others, Psychiatric Solutions Institutional Investor Group has timely submitted a motion for appointment as the lead plaintiff for this case.  In doing so,

10

Chicago Police and KBC Asset Management NV have each executed a certification attesting to its respective willingness to serve as a representative of the Class and provide testimony at a deposition and trial if necessary.  *See* Sworn Certification of John J. Gallagher, Jr. on Behalf of the Policemen's Annuity and Benefit Fund of Chicago and KBC Asset Management NV's "Plaintiff's Certification Pursuant to Federal Securities Laws," attached as Exhibits B and D respectively to the Stranch Affidavit.  Accordingly, Psychiatric Solutions Institutional Investor Group has satisfied the first requirement to serve as lead plaintiff for the Class.  Section 21D(a)(3)(B)(iii)(I)(aa), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).

**2.    Psychiatric Solutions Institutional Investor Group Is the Most Adequate Lead Plaintiff**

        **a.    Psychiatric Solutions Institutional Investor Group Has the Largest Financial Interest**

Under the PSLRA, any member of the purported class may move for appointment as lead plaintiff within 60 days of the publication of notice that the action has been filed.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).  Subsequently, the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members…" 15 U.S.C. § 78u-4(a)(3)(B)(i).

The legislative history of the PSLRA demonstrates that it was intended to encourage institutional investors, such as Psychiatric Solutions Institutional Investor Group, to serve as lead plaintiff.  The explanatory report accompanying the PSLRA's enactment specifically states that:

> The Conference Committee seeks to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring courts to presume that the member of the purported class with the largest financial stake in the relief sought is the "most adequate plaintiff."
>
>        *    *    *
>
> The Conference Committee believes that…in many cases the beneficiaries of pension funds – small investors – ultimately have the greatest stake in the outcome of the lawsuit.  Cumulatively these small investors represent a single

> large investor interest. Institutional investors and other class members with large
> amounts at stake will represent the interests of the plaintiff class more effectively
> than class members with small amounts at stake.

H.R.Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733.

Psychiatric Solutions Institutional Investor Group is the exemplary lead plaintiff envisioned by Congress – comprised of institutional and sophisticated investors, with a real financial interest in the litigation. *See Cendant*, 404 F.3d at 180 (PSLRA establishes "a paradigm in which the plaintiff with the largest stake in the case, usually a large and sophisticated institution, is accorded the status of lead plaintiff and assigned the right to appoint and duty to monitor lead counsel for the class"); *In re Vicuron Pharm. Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004) ("'increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions'") (*quoting* H.R. Conf. Rep. No. 104-369, at 34, 104th Cong. 1st Sess. (1995)); *In re Am. Serv. Group, Inc.*, 2006 U.S. Dist. LEXIS 61799, at *9-10 ("[t]he PSLRA's legislative history reflects congressional intent to favor institutional investors that have greater financial resources and experience to satisfy their fiduciary duty to class members").

Moreover, Psychiatric Solutions Institutional Investor Group is ideally suited for the role as lead plaintiff and should be appointed because it believes that it has the largest financial interest in the relief sought by the Class. 15 U.S.C § 78u-4(a)(3)(B)(iii). Courts in the Sixth Circuit and elsewhere look to four factors in determining which movant has the largest financial interest in the litigation. These factors are: (i) the number of shares purchased during the class period; (ii) the number of net shares purchased during the class period; (iii) the total net funds expended during the class period; and (iv) the approximate loss suffered. *See In re Am. Serv. Group, Inc.,* 2006 U.S. Dist. LEXIS 61799, at *10; *Cendant*, 264 F. 3d. at 223; *In re Vicuron*

*Pharm.*, 225 F.R.D. at 511 (recognizing that the financial loss is the most significant of these elements and recognizing as an additional factor that "institutional investors are preferred lead plaintiffs").

Using each of these factors, Psychiatric Solutions Institutional Investor Group believes that it has the largest financial interest in the outcome of this lawsuit. First, Chicago Police purchased 85,700 shares of Psychiatric Solutions during the Class Period, with net purchases of 75,000 shares, a net spending of $2,466,901, and suffered a $1,154,401 loss. Second, KBC Asset Management NV purchased 105,043 shares during the Class Period, with net purchases of 70,069 shares, net spending of $2,255,780 and suffered a $1,004,912 loss. Collectively, Psychiatric Solutions Institutional Investor Group purchased 190,743 shares during the Class Period, with net purchases of 145,069 shares, a net spending of $4,722,681 and suffered a $2,159,313 loss. *See* Stranch Affidavit, Exhibits B - E.

Accordingly, with a loss of $2,159,313, Psychiatric Solutions Institutional Investor Group believes that it possesses by far the largest financial interest of any movant seeking appointment and is ideally suited for the role as lead plaintiff.

> **b.**  **Psychiatric Solutions Institutional Investor Group Satisfies the Requirements of Rule 23**

Psychiatric Solutions Institutional Investor Group also satisfies the adequacy and typicality requirements of Rule 23, which are the provisions of Rule 23 that are relevant to the Court's determination of lead plaintiff under the PSLRA. *See Cendant*, 264 F.3d at 263. Both Chicago Police and KBC Asset Management NV are typical of, and ideally suited to represent, the entire Class.

With respect to typicality under Rule 23(a)(3), the Court "must decide whether the circumstances of the movant 'are markedly different or the legal theory upon which the claims of

that movant are based differ from that upon which the claims of other class members will perforce be based.'" *Vicuron*, 225 F.R.D. at 511 (*quoting Cendant*, 264 F.3d at 265). "The typicality requirement is satisfied if the plaintiff, as a result of the same course of conduct, suffered the injuries as the absent class members, and their claims are based on the same legal issues." *In re Sterling Fin. Corp.*, 2007 WL 4570729, at *4. Here, the claims of Chicago Police arise from the same alleged course of misconduct at Psychiatric Solutions as the claims of other Class members – *i.e.,* the artificial inflation of Psychiatric Solution's securities caused by the Company's fraudulent public disclosures.

With respect to adequacy of representation under Rule 23(a)(4), the Court "must determine whether that movant has the ability and incentive to represent the claims of the class vigorously, whether it has obtained adequate counsel, and whether there is a conflict between the movant's claims and those asserted on behalf of the class." *Vicuron*, 225 F.R.D. at 511 (internal citations and quotations omitted). The adequacy requirement is satisfied when "both the class representative and its attorneys are capable of satisfying their obligations, and neither has interests conflicting with those of the other class members." *In re Sterling*, 2007 WL 4570729, at *4 (internal quotations omitted). Here, Psychiatric Solutions Institutional Investor Group's interests are not antagonistic to those of the Class and are clearly aligned with its members. As detailed above, its claims share substantially similar questions of law and fact with the claims of members of the proposed Class, and its claims are typical of the claims of members of the Class.

Moreover, Psychiatric Solutions Institutional Investor Group has selected counsel who are highly experienced in prosecuting securities class actions such as this to represent the Class and serve as lead counsel. *Id. See* Exhibits F and G to Stranch Affidavit (Resumes of Barrack Rodos & Bacine ("BR&B") and Motley Rice LLC ("Motley Rice")).

For these reasons, Psychiatric Solutions Institutional Investor Group satisfies the requirements of Rule 23 and all of the PSLRA's prerequisites for appointment as lead plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B) and should be appointed lead plaintiff in this action.

## II. THE COURT SHOULD APPROVE PSYCHIATRIC SOLUTIONS INSTITUTIONAL INVESTOR GROUP'S CHOICE OF LEAD COUNSEL FOR THE CLASS

Pursuant to the PSLRA, subject to the Court's approval, the lead plaintiff is to select and retain counsel to represent the Class. *See Cendant*, 264 F.3d at 222-23, 276. The PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel selection and counsel retention." *Id.* at 276. In this action, Psychiatric Solutions Institutional Investor Group has selected and retained BR&B and Motley to serve as lead counsel.

Motley Rice members have substantial experience in the prosecution of shareholder and securities class actions.[1] *See* Motley Rice Resume, Stranch Affidavit, Ex. G. Motley Rice is currently serving as lead or co-lead counsel in securities cases against Dell, Vivendi, Sprint, and Medtronic, among others.

Barrack, Rodos & Bacine has extensive experience litigating securities class actions and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. *See* Stranch Affidavit, Ex. F. BR&B has been appointed as lead counsel in dozens of securities class actions, including numerous cases since the passage of the PSLRA. Further, BR&B has served as co-lead counsel in two of the largest securities class action recoveries in history: *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288 (DLC) (S.D.N.Y.); and *In re*

---

[1] As a district court noted when appointing Motley Rice Co-Lead Counsel in *Marsden v. Select Medical Corp.*, No. 04-4020 (E.D. Pa. Order entered Oct. 5, 2006), "Motley Rice possess[es] the requisite knowledge and skill in securities litigation to ably prosecute this matter on behalf of the class."

*Cendant Corp. Sec. Litig.*, No. 98-CV-1664 (WHW) (D.N.J.). Among other examples, BRB served as co-lead counsel in *In re Bridgestone Corp. Securities Litigation*, 3:01–cv–00017, (M.D. Tenn.), which was vigorously litigated for several years, resulting into a favorable settlement in the amount of $30 million that was approved earlier this year. The firm served as a co-lead counsel in *In re McKesson HBOC Inc. Securities Litigation*, 5:99-cv-20743-RMW (N.D. Cal.), achieving settlements in excess of $1 billion.

In addition, the firm served as a co-lead counsel in *In re Merrill Lynch & Co., Inc. Securities, Derivative & ERISA Litigation*, Master File No. 07-cv-9633 (LBS)(AJP)(DFE) (S.D.N.Y.), which recently settled for $475 million, as sole lead counsel in *In re Schering-Plough Securities Litigation*, Master File No. 01-CV-0829 (KSH/RJH) (D.N.J.), which recently settled for $165 million, and as a co-lead counsel in *In re The Mills Corp. Securities Litigation*, No. 1:06-cv-00077 (LO-TRJ) (E.D. Va.), where settlements totaling $202.75 million, plus interest, are currently pending before the court.

In her opinion approving a partial settlement of over $2.5 billion with the Citigroup Defendants in *WorldCom,* Judge Denise Cote described the services provided by BR&B as co-lead counsel as follows:

> The quality of the representation given by Lead Counsel is unsurpassed in this Court's experience with plaintiffs' counsel in securities litigation. Lead Counsel has been energetic and creative… It has behaved professionally and has taken care not to burden the Court or other parties with needless disputes. Its negotiations with the Citigroup Defendants have resulted in a settlement of historic proportions. It has cooperated with other counsel in ways that redound to the benefit of the class and those investors who have opted out of the class. The submissions of Lead Counsel to the Court have been written with care and have repeatedly been of great assistance.
>
> In sum, the quality of representation that Lead Counsel has provided to the class has been ***superb***….

*In re WorldCom, Inc. Sec. Litig.*, No. 02 civ. 3288 (DLC), 2004 U.S. Dist. LEXIS 22992, at *67-68, *72-73 (S.D.N.Y. Nov. 12, 2004).

Proposed liaison counsel, Branstetter, Stranch & Jennings, PLLC, has been providing diverse legal services to its clients for over fifty years. As indicated in its firm resume attached to the Stranch Affidavit as Exhibit H, the Branstetter Stranch firm has litigated numerous cases in the Middle District, as well as nationwide, and serves as counsel for plaintiffs in class actions and complex litigation, including securities, derivative and ERISA cases.[2]

And in *In re Apollo Group Inc. Securities Litigation,* Master File No. CV-04-2147 PHX-JAT (D. Ariz.), BR&B was lead counsel for a class headed by Chicago Police, securing a jury verdict in January 2008 for the full amount per share requested, which in the aggregate could exceed $200 million.[3] At the conclusion of the trial lasting over two months, Judge Teilborg commented that trial counsel:

> "[B]rought to this courtroom just extraordinary talent and preparation.... The arguments that have been made in every instance have been well-prepared and well-presented throughout the case. *** Likewise, for the professionalism and the civility that you -- and the integrity that you have all demonstrated and exuded throughout the handling of this case, it has just, I think, been very, very refreshing and rewarding to see that.*** [W]hat I have seen has just been ***truly exemplary.***"

///

///

///

///

---

[2] Including specifically, *In re: Nortel Network Corp. "ERISA" Litigation*, MDL No. 3:03-MD-1537 where Branstetter Stranch serves as co-lead counsel which is currently pending before the Court.

[3] That verdict is now on appeal after judgment as a matter of law was entered for defendants in August 2008.

## CONCLUSION

For the foregoing reasons, Psychiatric Solutions Institutional Investor Group respectfully requests that the Court (i) appoint Psychiatric Solutions Institutional Investor Group to serve as lead plaintiff for the Class; (ii) approve Psychiatric Solutions Institutional Investor Group's selection of Barrack, Rodos & Bacine and Motley Rice to serve as lead counsel for the Class and (iii) approve Psychiatric Solutions Institutional Investor Group's selection of Branstetter Stranch as liaison counsel.

Dated: November 20, 2009                           Respectfully submitted,

                                                    /s/ J. Gerard Stranch, IV
                                                   J. Gerard Stranch, IV (#023045)
                                                   James G. Stranch, III (#002542)
                                                   Jane B. Stranch (#006044)
                                                   **BRANSTETTER, STRANCH &**
                                                       **JENNINGS**
                                                   227 Second Avenue North, Fourth Floor
                                                   Nashville, Tennessee 37201-1631
                                                   Telephone: (615) 254-8801
                                                   Facsimile: (615) 250-3970

                                                   *Attorneys for Plaintiff and [Proposed]*
                                                   *Liaison Counsel for the Class*

                                                   Stephen R. Basser
                                                   Samuel M. Ward
                                                   **BARRACK, RODOS & BACINE**
                                                   600 West Broadway, Suite 900
                                                   San Diego, CA  92101
                                                   Tel.: (619) 230-0800
                                                   Fax: (619) 230-1874

                                                        -and-

                                                   Daniel E. Bacine
                                                   Chad Carder
                                                   **BARRACK, RODOS & BACINE**
                                                   2001 Market Street, Suite 3300

18

Philadelphia, PA 19103
Phone: (215) 963–0600
Fax: (215) 963–0838

*Attorneys For Policemen's Annuity Benefit
Fund of Chicago, Psychiatric Solutions
Institutional Investor Group and [Proposed]
Lead Counsel for the Class*

James M. Hughes
William S. Norton
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mount Pleasant, SC  29464
Telephone:  (843) 216-9000
Facsimile:  (843) 216-9440

William H. Narwold
**MOTLEY RICE LLC**
20 Church Street, 17th Floor
Hartford, CT  06103
Telephone:  (860) 882-1676
Facsimile:   (860) 882-1682

*Attorneys for KBC Asset Management NV,
Psychiatric Solutions Institutional Investor
Group and [Proposed] Lead Counsel for the
Class*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on November 20, 2009, a true and correct copy of the foregoing document was forwarded by electronic means via the Court's electronic filing system to the following:

**Catherine J. Kowalewski**
Coughlin, Stoia, Geller, Rudman & Robbins, LLP
655 W Broadway
Suite 1900
San Diego , CA 92101
(619) 231-1058
Email: katek@csgrr.com

**David C. Walton**
Coughlin, Stoia, Geller, Rudman & Robbins, LLP
655 W Broadway
Suite 1900
San Diego , CA 92101
(619) 231-1058
Fax: (619) 231-7423
Email: davew@csgrr.com

**Gerald E. Martin**
Barrett, Johnston & Parsley
217 Second Avenue, N
Nashville , TN 37201
(615) 244-2202
Email: jmartin@barrettjohnston.com

**Thomas C. Michaud**
Vanoverbeke, Michaud & Timmony, P.C.
79 Alfred Street
Detroit , MI 48201
(313) 578-1200
Fax: (313) 578-1201
Email: tmichaud@vmtlaw.com

**Jessica Perry Corley**
Alston & Bird LLP
One Atlantic Center
1201 W Peachtree Street
Atlanta , GA 30309-3424
(404) 881-7000
Fax: (404) 881-7777
Email: jessica.corley@alston.com

**Darren J. Robbins**
Coughlin, Stoia, Geller, Rudman & Robbins, LLP
655 W Broadway
Suite 1900
San Diego , CA 92101
(619) 231-1058
Email: darrenr@csgrr.com

**Douglas S. Johnston , Jr.**
Barrett, Johnston & Parsley
217 Second Avenue, N
Nashville , TN 37201
(615) 244-2202
Email: djohnston@barrettjohnston.com

**Michael J. Vanoverbeke**
Vanoverbeke, Michaud & Timmony, P.C.
79 Alfred Street
Detroit , MI 48201
(313) 578-1200
Fax: (313) 578-1201
Email: mvanoverbeke@vmtlaw.com

**Timothy L. Miles**
Barrett, Johnston & Parsley
217 Second Avenue, N
Nashville , TN 37201
(615) 244-2202
Email: tmiles@barrettjohnston.com

**Lisa R. Bugni**
Alston & Bird LLP
One Atlantic Center
1201 W Peachtree Street
Atlanta , GA 30309-3424
(404) 881-7000
Fax: (404) 253-8359
Email: lisa.bugni@alston.com

**Michael T. Harmon**
Waller, Lansden, Dortch & Davis, LLP
Nashville City Center
511 Union Street
Suite 2700
Nashville , TN 37219
(615) 244-6380
Fax: (615) 244-6804
Email: michael.harmon@wallerlaw.com

**Todd Richard David**
Alston & Bird LLP
One Atlantic Center
1201 W Peachtree Street
Atlanta , GA 30309-3424
(404) 881-7000
Fax: (404) 881-7777
Email: todd.david@alston.com

W. Travis Parham
Waller Lansden Dortch & Davis, LLP
2700 Nashville City Center
511 Union Street
Nashville , TN 37219
(615) 244-6380
Fax: 615-244-6804
Email: travis.parham@wallerlaw.com

**Waverly David Crenshaw , Jr.**
Waller, Lansden, Dortch & Davis
Nashville City Center
511 Union Street
Suite 2100
Nashville , TN 37219
(615) 244-6380
Email: wcrenshaw@wallerlaw.com

On this 20th day of November, 2009          /s/  J. Gerard Stranch, IV
                                            J. Gerard Stranch, IV