IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

GARDEN CITY EMPLOYEES' )
RETIREMENT SYSTEM, Individually and )
on Behalf of All Others Similarly Situated, )
)
    Plaintiffs, ) CASE NOS. 3:09-cv-00882 and
) 3:09-01211
) JUDGE HAYNES
v. )
)
PSYCHIATRIC SOLUTIONS, INC., et al., )
)
    Defendants. )

## MEMORANDUM

Plaintiff, Garden City Employees' Retirement System, on behalf of itself and all other persons similarly situated, and Plaintiff James Pedric in related action No. 3:09-01211, filed these actions that are consolidated herein asserting claims under the Securities Exchange Act of 1934, 15 U.S.C. § 20(a) and Rule 10b-5, 17 C.F.R. § 240.10b-5, against the Defendants: Psychiatric Solutions, Inc. (the "Company"), Joey A. Jacobs, Brent Turner, Jack E. Polson, Terrance Bridges, Ronald Morgan Fincher, Mark P. Clein, David M. Dill, Richard D. Gore, Christopher Grant, Jr., William M. Petrie, and Edward K. Wissing. In sum, Plaintiffs' claims are that the Defendants allegedly issued materially false and misleading statements concerning their Company's safeguards and controls over its operations, including at its Riveredge Hospital ("Riveredge") facility. Plaintiffs allege that based upon their positions at the Company, the individual Defendants were aware of and participated in these alleged violations of the Securities Exchange Act.

Before the Court are three motions:[1] (1) Joe Middendorf's motion for appointment as lead Plaintiff and approval of his selection of class counsel (Docket Entry No. 29)[2]; (2) Psychiatric Solutions Institutional Investor Group's[3] motion for appointment as lead Plaintiff and approval of its selection of class counsel (Docket Entry No. 32); and (3) Central States, Southeast and Southwest Areas Pension Fund's ("Central States") motion for appointment as lead Plaintiff and approval of its selection of class counsel (Docket Entry No. 40).

In support of their respective motions, each moving party cites its losses caused by the Defendants' alleged acts and the experience of their selected counsel. Central States expended in excess of over $6 million for its shares of the Company and alleges a loss of $2,493,501. The Group expended $4,722,681 for its shares and alleges a loss of $2,159,313. Joe Middendorf asserts a loss of $60,128.

This action arises under the Private Securities Litigation Reform Act of 1995 (PSLRA), Pub. L. No. 104-67, that amended the Securities Act of 1933, 15 U.S.C. § 77a-77bbb, and the Securities Exchange Act of 1934, 15 U.S.C. § 78a-78lll. 15 U.S.C. § 77z-1(a)(1). Among the PSLRA's threshold requirements is notice to potential class members upon the filing of the first class action. 15 U.S.C. § 78u-4. Under these provisions, the named Plaintiff in the first filed

---

[1] The pending motions are by class members who have the statutory right to move for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i).

[2] On December 7, 2009, Joe Middendorf filed a response (Docket Entry No. 57) to the other lead plaintiff motions, conceding that based on the losses submitted by the parties in the opening papers, he did not have the largest financial interest in this case. Middendorf also stated that he was not filing an opposition to the other lead plaintiff motions.

[3] Psychiatric Solutions Institutional Investor Group (the "Group") is comprised of institutional investors Policemen's Annuity Benefit Fund of Chicago (the "Policemen's Fund") and KBC Asset Management NV ("KBC").

action must publish notice within twenty (20) days of filing the action to inform potential class members of their right to move to be appointed lead Plaintiffs. 15 U.S.C.A. § 78u-4(a)(3)(A)(i). The published notice should instruct potential class members "that, *no later than 60 days after the date on which the notice is published,* any member of the purported class may move the court to serve as led plaintiff of the purported class." 15 U.S.C.A. § 78u-(a)(3)(A)(i)(II) (emphasis added). Such notice must be published "in a widely circulated national business-oriented publication or wire service." 15 U.S.C.A. § 78u-4(a)(3)(A)(i). "If more that one action on behalf of a class asserting substantially the same claim or claims arising under the chapter is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published in accordance with clause (i)." 15 U.S.C.A. § 78u-(a)(3)(A)(ii) (emphasis added). Here, it is undisputed that the Plaintiff in this action provided the requisite notice by publications in national news media.

Once adequate notice is given, the PSLRA describes a two-step process: consolidation of the various actions and appointment of the lead plaintiff.

> If more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter . . . has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, <u>the court shall not make the [lead-plaintiff] determination . . . until after the decision on the motion to consolidate is rendered</u>.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Currently, a motion to consolidate cases is pending in a related shareholder derivative action, <u>James Pedric v. Joey A. Jacobs, et al.</u>, Case No. 3:09-01211. (Docket Entry No. 33). That case was previously transferred from the Honorable Thomas Wiseman to this Court as a related shareholder derivative action (Docket Entry No. 37). Upon review of that action, the motion to consolidate should be granted, and Case No. 3:09-

3

01211 should be consolidated with this action for appointment of a lead plaintiff, and the pending motion to dismiss in that action (Docket Entry No. 34) will be addressed after the lead plaintiff is appointed and has filed a response. No motion for appointment as a lead plaintiff has been filed in the related Case No. 3:09-01211. Thus, the choice here is between Central States and the Group.

Under the PLSRA, the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interest of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). In addition, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 77z-1(a)(3)(B)(v).

Under the PSLRA, with the filings of the complaints and motions, the Court must presume that the lead plaintiff with the "largest financial interest in the litigation" and whose claims are typical of other putative class members is the most adequate plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The lead plaintiff must also be capable of "fairly and adequately" protect[ing] the interest of the class. Fed. R. Civ. P. 23(a)(3)-(4); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb). A statutory presumption arises that the plaintiff with the "largest financial interest" also satisfies the typicality element. In re Cardinal Health, Inc. Securities Litigation, 226 F.R.D. 298, 301 (S.D. Ohio 2005). This presumption can be rebutted "only upon proof . . . that the presumptively most adequate plaintiff . . . will not fairly and adequately protect the interest of the class; or is subject to unique defenses that render such plaintiff incapable of adequately representing the class. In re Cendant Corp., 182 F.R.D. 144, 149 (D.N.J. 1998) (quoting 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II)(aa), (bb)). There

4

is not any showing here to rebut this statutory presumption. Thus, the controlling issue is which movant has the "largest financial interest."

The PSLRA "provides no definitive method for determining the 'largest financial interest.'" In re Cardinal Health, 226 F.R.D. at 302. "[T]he method used and the factors considered in determining each movant's financial interest remain fully within the discretion of the district court." Pirelli Armstrong Tire Corp. Retiree Med Benefits Trust v. LaBranche & Co., 229 F.R.D. 395, 406-407 (S.D.N.Y. 2004).

In determining which movant has the largest financial interest, most courts conduct a four-factor analysis consisting of: "(1) the number of shares that the movant purchased during the putative class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended by the plaintiff during the class period; and (4) the approximate losses suffered by the plaintiffs." Manual for Complex Litigation (Fourth) § 13.31 (2004); In re Cardinal Health, 226 F.R.D. at 303. Applying these factors as pertinent to the facts presented on these motions, considering the number of shares of the Company's stock purchased, the amounts expended for those stock purchases, and the alleged losses, Central States has the "largest financial interest."

As to the Group's various arguments, the PSLRA's legislative history reflects a Congressional intention to favor institutional investors that have the greater financial resources and experience to satisfy their fiduciary duties to the class members. See e.g., In re Critical Path, Inc. Sec. Litig., 156 F. Supp. 2d 1102, 1109 (N.D. Cal. 2001) (emphasizing "the PSLRA's goal of increasing the appointment of institutional investors and lead plaintiffs"). In addition, "[t]he manifest intent of the (PSLRA) is determining the Plaintiff most capable of pursuing the action

5

and representing the interests of the class." H. Conf. Rep. No. 104-369, at 34. This standard has been described as "let the money do the monitoring." Elliott J. Weiss & John S. Beckman, Let the Money do the Monitoring: How Institutional Investors Can Reduce Agency Costs in Securities Class Action, 104 Yale L.J. 2053 (1995). See S. Rep. 104-98, 1995 U.S.C.C.A.N. 679, 729 n. 32 (stating that "[t]his article provided the basis for the 'most adequate plaintiff provision' in the PSLRA). Central States meets this standard with regard to the amount of its loss. Moreover, Central States's assets reflect its financial ability to commit the resources to pursue the interests of the putative class in this litigation.

To be sure, the plaintiff with the larger numeric loss is not automatically the plaintiff with the "largest financial interest." See In re Moral Fin. Corp. Sec. Litig., 414 F. Supp. 2d 398, 403 (S.D.N.Y. 2006) (movant with $2.3 million in alleged losses and another movant with $1.9 million in alleged losses deemed to have functionally equal damages given the "probable margins of error involved in the various damage estimates."); In re Pfizer, Inc. Sec. Litig., 233 F.R.D. 334, 338 (S.D.N.Y. 2005) (a movant with $22.5 million in alleged losses and another $22.8 million in alleged losses have roughly equal damages ". . . [g]iven the probable margin of error involved in the damage estimates. . .").

Moreover, some courts measure the "largest financial interest" by a plaintiff's losses as a percentage of its assets or holdings. See Burke v. Ruttenberg, 102 F. Supp. 2d 1280, 1297, 1342 (N.D. Ala. 2000); Laborers Local 1298 Pension Fund v. Campbell Soup Co., No. 00-152 (JEI), 2000 U.S. Dist. LEXIS 5481 at *5-6 (D.N.J. April 24, 2000). Other courts utilize accounting standards to determine this issue. Johnson v. Dana Corp., 236 F.R.D. 349, 351-52 (N.D. Ohio 2006).

Case 3:09-cv-00882   Document 99   Filed 04/30/10   Page 6 of 8 PageID #: 1370

Here, given Central States's losses, its assets, and the limited number of Plaintiffs seeking lead plaintiff status, the Court does not ascertain any practical need for an alternate method for determining the largest financial interest nor for the appointment of co-lead plaintiffs. If, later in this litigation, good cause is shown to revisit this issue, any plaintiff may move the Court for reconsideration of its appointment of the lead plaintiff.

To be sure, the Group contends that the "largest financial interest" determination for the lead Plaintiff should focus on the "last-in, first-out" (LIFO) method of loss calculation during the class period. The Group argues that this method is more widely used by various courts, but the Court notes that this method was not argued by the Group until its response to Central States's motion for appointment as lead plaintiff. Other Courts have rejected this method of calculating plaintiffs' losses to further the appointment of the group and its counsel. See In re Cendant Corp. Litig., 264 F.3d 201, 266-67 (3d Cir. 2001); In re XM Satellite Radio Holdings Sec. Litig., 237 F.R.D. 13, 18 (D.D.C. 2006).

The next issue is the Court's approval of the lead Plaintiff's choice of counsel who will be lead counsel for the litigation. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). "[T]he role of class counsel is akin to that of a fiduciary to the absent class members." Greenfield v. Villager Indus., Inc., 483 F.2d 824, 832 (3d Cir. 1973). "[C]lass action counsel possess, in a very real sense, fiduciary obligations to those not before this court." Id. Here, Central States's counsel is well qualified and experienced to represent the class in this action and the Court approves Central States's choice of counsel.

Accordingly, Joe Middendorf's motion for appointment as lead Plaintiff and approval of his selection of class counsel (Docket Entry No. 29) should be denied; the Group's motion for

7

appointment as lead Plaintiff and approval of its selection of class counsel (Docket Entry No. 32) should be denied; and Central States's motion for appointment as lead Plaintiff and approval of its selection of class counsel (Docket Entry No. 40) should be granted. Given the Court's disposition of the above motions, Defendants' motion for a hearing (Docket Entry No. 79) should be denied as moot. The parties shall submit a proposed case management order within 10 days of entry of the accompanying Order.

An appropriate Order is filed herewith.

**ENTERED** this the 30th day of April, 2010.

William J. Haynes, Jr.
United States District Judge